The STATE of Ohio, Appellee,

v.

GORDON, Appellant.

[Cite as *State v. Gordon* (1994), 95 Ohio App.3d 334.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64142.

Decided July 18, 1994.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Scott G. Salisbury,* Assistant Prosecuting Attorney, for appellee.

*Brian D. Dunbar,* for appellant.

NUGENT, Judge.

Defendant-appellant Michael Gordon appeals from his conviction for possession of cocaine (R.C. 2925.11) following a no contest plea. Defendant assigns error in the court's refusal to grant his motion to suppress the evidence of cocaine found by the police in a warrantless search of defendant's car after a traffic stop.[1] We find no merit in appellant's appeal and affirm the judgment below for the reasons hereinafter stated.

█ In reviewing the trial court's ruling on appellant's motion to suppress, we are duty bound to review the record, accepting the trial court's findings of fact as true so long as they are supported by competent, credible evidence, and to independently determine whether, as a matter of law, the trial court erred in applying the substantive law to the facts of the case. *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141, 1142–1143; see, also, *State v. McKinney* (Mar. 11, 1993), Cuyahoga App. No. 64063, unreported, 1993 WL 69549.

The facts available to this court from which to make this determination are contained in the transcript of the hearing on appellant's motion to suppress. The testimony of the lone witness who appeared at the hearing, Police Officer Richard A. Calabrese, reveals the following information: On October 3, 1991, at approximately 8:45 p.m., Cleveland Police Officers Calabrese and Robert Naggy were headed northbound on East 140th Street, a two-lane highway, when they noticed a Volkswagen Jetta and a pick-up truck illegally parked on the side of the road. Upon observing this, the officers turned their patrol car around and pulled up behind the Jetta, at which time they noticed that the rear license plate had no illumination. The officers exited their patrol car, approached the female and two males standing in between the Jetta and the pick-up truck, and asked to whom the Jetta belonged. After appellant identified himself as the owner of the Jetta, the officers ran a computer check on his identification, which revealed that he did not have a driver's license. The officers then put appellant in the back of their patrol car and advised him that they were going to issue him citations for having no rear license plate illumination and driving without a license. The officers further advised appellant that his car would have to be towed. At this point, the occupants of the pick-up truck were advised to leave the scene, which they did. There is no indication in the record that the officers checked the identification of the occupants of the pick-up truck.

---

1. Appellant's sole assignment of error is as follows:

"Where the police conducted an improper inventory search of the defendant's automobile, the denial of the defendant's motion to suppress was improper."

Officer Calabrese further testified that while the citations were being written, some forty-five minutes after having left the scene, the female occupant of the pick-up truck returned and offered to drive appellant's car to his home so that it would not have to be towed. This offer was refused by the police officers. Officer Calabrese explained that it was standard police procedure to tow a car when there is no other passenger in the car with a driver's license.

During the time Officer Naggy wrote the citations, Officer Calabrese secured the vehicle identification number, the license plate number, and the registration expiration date from appellant's car. Then, after calling a tow truck, Officer Calabrese conducted an administrative inventory of appellant's car, during which he discovered a plastic pouch containing suspected crack cocaine on the console between the bucket seats. Officer Calabrese explained that it was standard police procedure to inventory a car prior to towing it.

Upon discovering the suspected cocaine, Officer Calabrese placed appellant under arrest for violation of state drug laws and advised him of his constitutional rights. Officer Calabrese said appellant, who expressed an understanding of his constitutional rights, then told the officers that the cocaine was his, that he was on probation for a previous drug arrest, and that he was currently scheduled to enter a drug rehabilitation program.

Based on the above facts, appellant argues that the motion to suppress should have been granted for two reasons: First, because the vehicle was not lawfully impounded at the station house at the time the search occurred; and second, because the officers failed to honor the request of the unidentified female occupant of the pick-up truck to drive appellant's car home for him in order to avoid the tow. This, the appellant contends, demonstrated that the police officers had a pretextual motive to conduct an evidentiary search of the car. We do not agree.

"[A] routine inventory search of a lawfully impounded automobile is not unreasonable within the meaning of the Fourth Amendment when performed pursuant to standard police practice, and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded automobile." *State v. Robinson* (1979), 58 Ohio St.2d 478, 12 O.O.3d 394, 391 N.E.2d 317, citing *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000.

■ Such a search is deemed to be constitutionally permissible in the absence of a warrant because it reasonably serves to protect the owner's property while it is in police custody, to protect police against claims concerning lost or stolen property, and to protect police and the public against potential hazards posed by

the impounded property. *Florida v. Wells* (1990), 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1; *South Dakota v. Opperman, supra.*

While both *Robinson* and *Opperman, supra,* make it clear that the validity of an inventory is dependent upon the lawfulness of the initial impoundment, neither court specified the conditions under which an automobile may legitimately be taken into police custody, *i.e.,* lawfully impounded. In *Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739, however, the United States Supreme Court gave blanket approval to routine impoundments if authorized by standardized police procedures.

In *Bertine,* the defendant was arrested for driving under the influence of alcohol. Following his arrest, the defendant suggested that his girlfriend pick up his car. This suggestion was refused by the police. Before a tow truck arrived to take his van to an impoundment lot, a police officer inventoried the contents of the van, including the contents of a closed backpack, and discovered controlled substances, drug paraphernalia, and a large amount of cash.

While the *Bertine* court focused on the issue of opening a closed container during an inventory search, the court also had to determine whether the van had been lawfully impounded. In concluding that it was, the court ruled that a routine impoundment of a vehicle under standardized procedures is reasonable, and thus lawful, despite the availability of less intrusive alternative dispositions for the removal of the vehicle. The court explained as follows:

"The Supreme Court of Colorado also expressed the view that the search in this case was unreasonable because * * * Bertine himself could have been offered the opportunity to make other arrangements for the safekeeping of his property. * * * And while giving Bertine an opportunity to make alternative arrangements would undoubtedly have been possible, we said in *Lafayette:* '[T]he real question is not what could have been achieved,' but whether the Fourth Amendment *requires* such steps * * *.

"The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means.

"We conclude that here, as in *Lafayette,* reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." (Footnote omitted.) *Id.* at 373–374, 107 S.Ct. at 742, 93 L.Ed.2d at 746–747 (explaining *Illinois v. Lafayette* [1983], 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65).

The court further ruled that a station-house setting was not critical to the constitutional validity of an inventory search as long as the search is conducted in

good faith and in accordance with standardized police procedure. *Id.* at 373, 107 S.Ct. at 742, 93 L.Ed.2d at 746–747.

In the case *sub judice,* Officer Calabrese testified that appellant did not have a valid driver's license, that there were no other passengers in his vehicle and that, in this situation, both written police regulations and established police procedure required that the vehicle be impounded. Officer Calabrese further explained that it was standard police procedure to inventory the contents of a vehicle prior to towing it. The evidence is clear that the officers impounded appellant's car as required by standardized police procedure.

■ *Bertine* further makes clear that it is not the function of this court to second-guess the Cleveland Police Department's standardized procedures for inventory searches. The fact that this court might, as a matter of hindsight, be able to devise equally reasonable rules requiring a different procedure does not render a search executed pursuant to established standard procedures, such as those in this case, constitutionally infirm. *Colorado v. Bertine, supra,* 479 U.S. at 374, 107 S.Ct. at 742, 93 L.Ed.2d at 747.

We find that appellant's reliance on this court's decision in *State v. Smith* (1992), 80 Ohio App.3d 337, 609 N.E.2d 212, is misplaced. In *Smith,* it was held that an automobile must be lawfully impounded at the station house before a valid inventory search can be conducted. That decision was effectively overruled by the later decision in *State v. Hathman* (1992), 65 Ohio St.3d 403, 604 N.E.2d 743, where the Ohio Supreme Court, citing *Bertine* with approval, indicated that a search conducted in the field and prior to towing would withstand Fourth Amendment scrutiny where it can be shown that the search was conducted pursuant to standard police procedure. The search at issue in *Hathman* was conducted by the Ohio State Highway Patrol before towing at a service plaza located on the Ohio Turnpike.

Although the Ohio Supreme Court in *Hathman* upheld the appellate court's decision which ordered the disputed evidence be suppressed, the court did so only after finding that there was insufficient evidence to support the contention that the search took place pursuant to an existing, standardized police policy or practice. The court did not, however, take issue with the fact that the vehicle had been impounded at the service plaza away from the station-house setting. Rather, the court stated that the vehicle had been lawfully impounded. See *id.,* paragraph two of the syllabus.

We further find no merit to appellant's contention that the police officers' refusal to honor the request of the unidentified female occupant of the pick-up truck to drive appellant's car home for him evidenced a pretextual motive on the part of the police officers to conduct an evidentiary search.

The record in this case demonstrates that the police officers followed standard procedure in refusing the request of the unidentified female occupant of the pickup truck to drive appellant's car home for him. Additionally, there is absolutely no evidence in the record before this court indicating that appellant ever solicited or consented to the request of the unidentified female to drive his vehicle to his home. It is not even known from the record whether the female had a valid driver's license or insurance. Given these facts, even if the police officers had discretionary authority to release the vehicle to a nonpassenger third party, we would find they acted reasonably in refusing to do so.

In addition, the trial court, which is in the best position to evaluate the credibility of the witness and which weighed all of the evidence presented during the hearing, rejected any notion that this was a pretextual stop. To the contrary, the trial court's factual determination that Officer Calabrese and Officer Naggy were conducting themselves as responsible and experienced police officers in accordance with standardized police procedures should not be second-guessed by this court without evidence to support the theory that the stop was merely pretextual.

Finally, we find appellant's reliance on *State v. Collura* (1991), 72 Ohio App.3d 364, 594 N.E.2d 975, to support his argument inapposite. In *Collura*, the court determined that the impounded vehicle, which was legally parked, could have been removed by the defendant's passenger and, therefore, the impoundment was unlawful. In this case, contrarily, Officer Calabrese testified that appellant's vehicle was illegally parked on the side of the road and was an impediment to the flow of traffic. Officer Calabrese further testified that there was no other passenger in appellant's car and, in this situation, standard procedure required the officers to impound the vehicle.

■ Absent any indicia in the record that the police officers acted in bad faith or in the absence of standardized procedure, this court can only conclude that the police officers comported with the requirements of the Fourth Amendment. Thus, for all of the foregoing reasons, the trial court's decision denying appellant's motion to suppress is affirmed.

*Judgment affirmed.*

MATIA, P.J., and PORTER, J., concur.