JOURNAL ENTRY AND OPINION
Appellant James Guy challenges his convictions of drug trafficking and extortion resulting from a jury trial before Judge Daniel Gaul. He alleges grounds of illegal search and seizure and ineffective assistance of counsel because his lawyer failed to file motions to suppress and to sever co-defendants, and allowed without objection, prejudicial questioning of critical witnesses by the state. We disagree and affirm.
Marilyn Lysius, co-defendant and a resident of Philadelphia, came to Cleveland on July 29, 1997, for the sole purpose of acting as a courier, a "mule", in the transfer of drugs from California to Cleveland. She was to be paid $1,250 to fly to California, receive the drugs, and return to Cleveland via Greyhound bus. Lysius' contact in Cleveland was a man whom she knew as "Tony", but later identified as Guy. After arriving at the Cleveland bus station, she and her four-year-old son, Kymahli, were met by Guy who drove them to the North Point Inn, located at Superior and East 14th in downtown Cleveland. Guy left, returned with an airline ticket, and drove Lysius and her child to the airport. There he informed Lysius that the airline ticket was for one passenger only and Kymahli would have to remain in Cleveland with him. Reluctantly, Lysius agreed.
When she arrived in California, she was met by a man named George, she was given money and a floral patterned suitcase containing marijuana. The suitcase had an identity tag in the name of Marsha James. Lysius was taken to the bus station where she purchased a one-way ticket to Cleveland and began the trip. On route, one of the buses broke down, and all of the passengers were transferred to another vehicle. When she arrived in Cleveland, Lysius discovered the floral bag was missing.
After she told Guy about the missing luggage, he took her to an ABC Check Cashing store and obtained a photo I.D. for her in the name of Marsha James. Guy then took Lysius back to the North Point Inn, secured a room for her and told her to do everything in her power to get the suitcase back. He informed her she would not get paid, and, more importantly, would not get her son back until the shipment was safe in his hands. He also relayed to her that he had orders to do whatever was necessary to find the luggage or dispose of any trace of her and her son.
Lysius made several attempts to locate the suitcase, including going back to the bus station and making telephone calls to the stations in the cities she remembered stopping. Because she could not locate the drugs and, out of the fear of harm to her son, she called the police.
Lysius gave the officers a description of Guy, identified his automobile as a gold Toyota Corolla, and told them of the trip to California including the contents of the suitcase she was supposed to have brought back. The police, with her assistance, blanketed the area in search of Guy and his car. The police acted on every tip, set up wire taps on Lysius' phone and placed plain-clothed policemen outside the motel and bus station in hopes of finding Guy. They also assisted Lysius in her attempt to locate and eventually retrieve the floral suitcase. During the course of the investigation, Lysius was very cooperative. She gave the police permission to search both the floral suitcase and her Philadelphia home in the hope of finding some leads.
Lysius was contacted by Guy, and, after several conversation with him, was told that someone would bring the payment of $1,250 and Kymahli to her in exchange for the floral suitcase. Elain Rankin, the courier and Guy's co-defendant, brought the child and the money to the motel where the exchange was effected. As Lysius and Rankin were leaving the motel, they were arrested. Courtney Laing, Rankin's boyfriend and co-defendant, appeared at the motel looking for her and was also apprehended.
The officers decided to page Guy to Laing's pager number expecting that Guy would respond by leaving a telephone number where he could be contacted on Laing's pager. A response to the pager was made and it was determined that Guy was calling from the second floor of 10518 Massie Avenue in Cleveland. The field agents dispatched to this location noted a gold Toyota parked in the driveway, and proceeded inside. After several arrests were made, Guy was found in a crawl space under the basement stairs. Guy was placed under arrest, and admitted that the gold Toyota in the driveway was his vehicle.
The officers, pursuant to police regulations, impounded the vehicle and, as they processed the vehicle for a tow, took an inventory of the contents of the vehicle and discovered a plastic bag in the trunk containing what they suspected to be marijuana. As a result of this search, more than 20,000 kilograms, or about 26 pounds of marijuana was confiscated.
On August 28, 1997, Guy was indicted along with three co-defendants: Lysius, Rankin, and Laing. Guy, Laing, and Rankin were indicted on three counts: (1) trafficking in marijuana in an amount between 5,000 and 20,000 grams, R.C. 2925.03; (2) kidnaping a child under the age of 13, R.C. 2905.01; and (3) extortion, R.C. 2905.11. Lysius was indicted on the drug trafficking count as well as child endangering, R.C. 2919.22. Prior to trial, Lysius pleaded guilty to lesser charges and agreed to testify for the state.
On November 12, 1997, Rankin and Laing were found not guilty of Kidnaping and Extortion, and the jury was hung on the charge of drug trafficking; Guy was found guilty of drug trafficking and extortion, but the jury was hung as to the count of kidnaping, which was ultimately dismissed by the state. Guy was sentenced to the Lorain Correctional Institution to a term of five years on each of the two counts, to be served consecutively, credit for time served, a forfeiture of his 1985 Toyota Corolla, valued at $1,550.00, and a $10,000 fine on each count.
Guy assigns two errors for our review. His first assignment of error states:
 I. THE DEFENDANT/APPELLANT, JAMES GUY, WAS DEPRIVED OF HIS RIGHT TO COUNSEL, AS WELL AS COMPETENT COUNSEL, AS HIS ATTORNEY, MICHAEL WEISS, FAILED TO REPRESENT THE DEFENDANT/APPELLANT, JAMES GUY, IN AN EFFECTIVE, COMPETENT PRESENTATION OF THE DEFENSE ON HIS BEHALF. THE DEFENDANT/APPELLANT WAS CONVICTED DUE TO THE INCOMPETENCY OF HIS COUNSEL IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS.
Guy maintains that his appointed lawyer's representation at trial was deficient because he failed to: (1) file a motion to suppress the recorded tapes and transcripts of his telephone conversations as well as the marijuana found in the trunk of his Toyota Corolla; (2) failed to file a motion to sever co-defendants; (3) failed to object to leading questioning by the prosecutor of two key witnesses; and (4) failed to "challenge" answers by two of the state's witnesses. As a direct result of these failures, Guy maintains he was prejudiced, found guilty, and sentenced accordingly.
The state maintains that the representation accorded to Guy was reasonable and sufficient and, moreover, that Guy failed to introduce evidence that, but for, his lawyer's tactics, the result of the trial would have been different.
In State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus, it was determined that, in Ohio, an ineffective assistance claim requires proof that "counsel's performance is proved to have fallen below an objective standard of reasonable representation," and, in addition, prejudice arises from counsel's performance. Id. Similarly, the federal test to determine ineffective assistance is whether "counsel's conduct so undermined the proper functioning of the adversarial process" that the defense was prejudiced. Strickland v. Washington (1984),466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692-693. In order to establish such prejudice, a defendant must demonstrate that there is a "reasonable probability that, were it not for his lawyer's errors, the results of the trial would have been different." Bradley, 42 Ohio St.3d at paragraph three of the syllabus. Furthermore, we operate under the presumption that a lawyer's assistance was both reasonable and professional. Statev. Thompson (1987), 33 Ohio St.3d 1, 10, 514 N.E.2d 407, 416-417. See, also, Strickland, 466 U.S. at 689.
A reviewing court, when making an evaluation, must be mindful that, "when there is no demonstration that counsel failed to research the facts and law, or that he was ignorant of a crucial defense and counsel makes a tactical choice, the reviewing court defers to counsel's judgment in the matter." State v. Clayton
(1980), 62 Ohio St.2d 45, 49, 402 N.E.2d 1189. See, also, Statev. Roberts (May 9, 1996), Cuyahoga App. No. 69310, unreported. As a result, the burden of proof of establishing the lawyer's effectiveness lies with the defendant since "in Ohio a properly licensed attorney is presumably competent". State v. Lytle
(1976), 48 Ohio St.2d 391, at 396.
Guy also argues that his lawyer's failure to object to the prosecutor's use of "excessively" leading questions gave rise to ineffective assistance of counsel.
Evid.R. 611 (C) states in pertinent part:
 (C) Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination.
As a result, it is within the sound discretion of the judge to permit the state to ask leading questions of its own witnesses.State v. Miller (1988), 44 Ohio App.3d 42, 541 N.E.2d 105. See, also, State v. Madden (1984), 15 Ohio App.3d 130, 133,472 N.E.2d 1126, 1130; State v. Smith (1977), 59 Ohio App.2d 194, 203,392 N.E.2d 1264, 1270. The proviso "except as may be necessary to develop his testimony" is quite broad, and the judge must exercise his judgment as to where the limits must be drawn.Miller, supra. See, also, State v. Lewis (1982), 4 Ohio App.3d 275,278, 448 N.E.2d 487, 490.
Guy maintains that his lawyer was deficient because he failed to object to leading questions presented by the prosecuting attorney, Deborah Naiman. Specifically, Guy points to the following offenses:
 Naiman: Did she explain to you what time when she did anything else . . . strike that. Did she tell you what events occurred on August 4th?
Det. Baumiller: Yes she did.
Naiman: Did she have her son with her at that time?
Det.: No.
 Naiman: Was she concerned about the well being of her son?
Det: Yes she was.
 Naiman: Okay now did she give you a description of the person who had met her at the terminal when she first arrived in Cleveland with the child back on July 30th?
Det.: Yes she did.
* * *
 Naiman: Did she explain to you how it was she had come into possession of this luggage earlier and how it was that she no longer had possession of it and it became missing?
Det: Yes.
* * *
 Naiman: Okay was that somebody else the person who at the time you knew as Tony?
Sgt. Patton: Yes.
Guy further maintains that the following questions proffered by his lawyer were also prejudicial.
 Weiss: Were you privy to other documents contained in I think Exhibit #1 which included ID's in the name of Sherlyn Thomas?
Sgt. Patton: Yes I was.
Weiss: And an Ohio card in the name of Marsha James?
 Sgt.: That is why I went to ABC Check Cashing. This is where she was allegedly taken by Tony to get this ID so she could retrieve the bag.
* * *
 Weiss: After this male was apprehended what if anything occurred that you were involved in?
 Sgt.: When the male (Laing) was apprehended, he was interviewed by other individuals on the Carribean Task Force while I continued to try to coordinate searches in the area. It appeared to me that with the female and the male coming to the motel we still did not know who Tony was, that Tony was probably in close proximity to the Motel and we were trying to do a sector search to locate Tony.
* * *
 I say eventually probably within the hour we noted the pager number that we knew for Tony was showing up on the pager (Laing's). What we did is we paged Tony's pager with Courtney's pager number and we received a telephone number that we then believed that is where Tony wanted to call him.
Although the issue presented in the case sub judice does not pertain to abuse of discretion but to a lawyer's failure to object, this form of questioning is routinely allowed and any objection undoubtedly would have been overruled. Furthermore, Guy, outside of directing this court toward what he considers the offending excerpts, fails to show in what way he was prejudiced by these leading questions.
Guy also asserts his lawyer was deficient because he failed to file motions to suppress concerning: (1) the marijuana seized by the police from the trunk of his Corolla; and (2) the audio taped testimony and transcripts of his conversations with Lysius.
In State v. Payton (1997), 119 Ohio App.3d 694, 704696 N.E.2d 240, the eleventh district court of appeals stated:
 [a]lthough a defendant's constitutional right to effective assistance does not require defense counsel to file a motion to suppress in every case, State v. Flors (1987), 38 Ohio App.3d 133, 139, 528 N.E.2d 950, 956-957, where there exists reasonable grounds for filing a motion to suppress, counsel's failure to file the motion may constitute ineffective assistance and warrant a reversal. State v. Garrett (1991), 76 Ohio App.3d 57, 63, 600 N.E.2d 1130, 1134.
It is well established, however, that "[a] criminal conviction will not be reversed on the ground of ineffective assistance of counsel solely because defense counsel failed to file a timely motion to suppress evidence, where the record does not demonstrate that the evidence was illegally obtained." State v.Hodges (1995), 107 Ohio App.3d 578, 588, 669 N.E.2d 256, 263, quoting State v. Gibson (1980), 69 Ohio App.2d 91,430 N.E.2d 954, paragraph two of the syllabus.
The disposition of Guy's second assignment of error renders the possible suppression of the seized marijuana moot. The judge, even if he had been presented a motion to suppress, would have overruled that motion because it was not illegally obtained and was confiscated in accordance with the Fourth Amendment of the United States Constitution.
Guy's suggestion that his lawyer erred in failing to object to the audio taped and transcribed telephone conversations between him and Lysius that were presented to the jury is also without merit. The tape recordings was legally obtained under R.C.2933.52 (B) (3), because they were made with Lysius' consent. Further, the use of taped recordings as a listening aid is within the discretion of the trial judge as long as the accuracy is not challenged. State v. Waddy (1992), 63 Ohio St.3d 424, 445-446,588 N.E.2d 819. In the present action, the admission of the tapes and the transcriptions, were extensively discussed with the judge and lawyers. It was agreed that if Guy's lawyer found any discrepancy between the transcription and the tapes, due to the possible interpretation of a Jamaican language known as Pa-twa, it was to be duly transcribed and submitted to the judge. In addition, the judge further ruled that all of the conversations on the tape could either be authenticated by Lysius, who was a party to all but one of the conversations, or by the officer who recorded the conversations.
Guy further maintains he was denied effective assistance of counsel because his lawyer failed to file a motion to sever the defendants under Crim.R. 14. Guy contends no evidence was offered at trial that even proximately placed him with Kymahli, and, as a result, he was prejudiced by the presence of co-defendants Laing and Rankin. Guy's argument has no foundation.
It is apparent that Guy's lawyer chose not to sever the co-defendant's as part of his trial strategy. He undoubtedly knew that had a motion to sever been granted, Laing and Rankin could still testify against Guy and may have maintained a hope that the presence of Rankin and Laing would divert some of the blame from Guy and result in a lighter sentence. A defense attorney is "not under a duty to sever defendants where it was not evident that appellant would be prejudiced by a joint trial under Crim.R. 14."State v. Thompson (April 27, 1995), Cuyahoga App. No. 67048, unreported. Where a lawyer has not violated an essential duty, ineffective assistance cannot be established. Id.
As a result, since the choice not to sever defendants was one of trial strategy, and Guy's lawyer was not mandated, under the circumstances, to file a motion to that effect, we defer to his judgment in this matter. We also find his choice not to challenge answers to questions he placed to Sargent Patton was also one of trial strategy, and did not amount to ineffective assistance. Accordingly the first assignment of error is not well taken
Guy's second assignment of error reads:
 II. ALL CONTRABAND SEIZED FROM THE TRUNK OF DEFENDANT/APPELLANT'S, JAMES GUY, AUTO WAS PROHIBITED FROM PRESENTATION INTO EVIDENCE, AS IT WAS OBTAINED WITHOUT BENEFIT OF WARRANT AND/OR OTHER PROBABLE CAUSE TO SEARCH HIS VEHICLE "BACKED INTO THE DRIVE AT THE ADDRESS OF 10518 MASSIE AVENUE". THIS IS PROHIBITED BY THE CONSTITUTIONAL RIGHT OF DEFENDANT/APPELLANT, JAMES GUY, TO BE SECURE FROM UNLAWFUL SEARCH AND SEIZURE.
Guy maintains that the contraband seized from his car, which was parked in his driveway, was the result of an illegal search and seizure. Specifically, he contends that because he was arrested inside of his home, a vehicle parked in the driveway and its contents were not subject to a search, under theFourth Amendment, as incident to the arrest.
The state maintains that no warrant was necessary because the police were merely following the department's procedure of taking an inventory of the vehicle prior to its tow and impoundment. It further submits the vehicle was properly impounded as it was used as a criminal tool in both the kidnaping and the transport of illegal contraband, and it was necessary to have it processed for fingerprints in order to secure evidence related to the kidnaping charge.
Unreasonable searches and seizures are prohibited by theFourth Amendment of the United States Constitution. Warrantless seizures are per se unreasonable unless they fall under one of the recognized exceptions. Katz v. United States (1967) 389 U.S. 347,357. See, also, State v. Collura (1991), 72 Ohio App.3d 364,594 N.E.2d 975. The burden of establishing that a warrantless search meets the requirements of an exception rests on the state.Collura, supra.
"`[A] routine inventory search of a lawfully impounded automobile is unreasonable within the meaning of theFourth Amendment when performed pursuant to standard police practice, and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of an impounded automobile.'" State v. Gordon (1994), 95 Ohio App.3d 334,642 N.E.2d 440, quoting State v. Robinson (1979), 58 Ohio St.2d 478,391 N.E.2d 317. An inventory search is deemed necessary in order to protect the property of the owner while it is in police custody, and to protect the police department against possible claims for lost or stolen property. Gordon,supra. The state may sufficiently meet its burden by presenting testimony that the police were adhering to standard police procedure in conducting the inventory search prior to towing.State v. Semenchuk (1997), 122 Ohio App.3d 30, 701 N.E.2d 19.
The validity of an inventory search is dependant upon the lawfulness of the initial impoundment. Gordon, supra. A vehicle may be lawfully impounded if it is authorized by standard police procedures. Id.
In the case sub judice, Patrolman Dean Graziolli testified that while at the home on Massie Avenue he was instructed to arrange for a tow and to inventory the vehicle. As a result, pursuant to department regulations, he notified Channel 7, the tow channel of the department, arranged for a tow, and then began filling out the tow sheet — documentation which indicated the vehicle's make and model, the owner, and the location of the tow. Graziolli went on to testify that while he was filling out this tow sheet, his partner, Patrolman Oliver, was filling out a process tow sheet. The process tow sheet, he stated, is done at the request of the supervisor and is processed only when the vehicle being impounded needs to be checked for any contraband or evidence incident to the arrest. In this case, a request was put into the scientific investigation unit for a dusting of fingerprints in relation to the kidnaping.
Graziolli further testified that he and his partner, Detective Hill, in following standard procedure, then effected an inventory search of the vehicle which yielded: (1) a large black plastic bag containing 20 plastic bags filled with marijuana; (2) a smaller black plastic bag with a ziploc bag peeking out, also containing marijuana; and (3) a suitcase containing childrens' and women's clothing. All of these items were then properly marked in evidence bags as required by department policy.
After careful review of the record, it is clear that Guy's Corolla was impounded as a result of the felony investigation of the kidnaping of Kymahli, as it was a criminal tool which is further evidenced by the request for fingerprinting. As a result, prior to the tow it was also proper, as dictated by department policy, to inventory the vehicle in order to safeguard the interests of both the police department and Guy.
In view of the foregoing, the judge did not err in denying Guys' motion to suppress because the warrantless search of his Corolla, pursuant to an inventory prior to impoundment, is an exception to the Fourth Amendment of the United States Constitution and was not an illegal search and seizure. Accordingly, Guys' second assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J., AND LEO M. SPELLACY, J., CONCURRINGIN JUDGMENT ONLY.
 _________________________ JUDGE ANNE L. KILBANE