OPINION
Defendant, Bobby Lee Clancy, appeals from his conviction on one count of carrying a concealed weapon in violation of R.C. 2923.12(A), which was entered on his plea of no contest after the trial court overruled Clancy's motion to suppress evidence.
The trial court denied Clancy's motion on a finding that the evidence Clancy sought to suppress, a gun that was seized from the glove box of his automobile during a warrantless search following Clancy's arrest, was nevertheless admissible because the search satisfied the inventory search exception to the Fourth Amendment's warrant requirement. We find that while the State failed to demonstrate that the automobile was lawfully impounded, which is a necessary predicate to the inventory search exception, the search was nonetheless lawful as incident to the arrest. Therefore, the decision of the trial court overruling Clancy's motion to suppress will be affirmed.
In the early morning hours of September 20, 2000, Officer Jeffrey Huber of the City of Dayton Police Department was dispatched on an aggravated robbery complaint. Huber met the victim of the alleged robbery, who told the officer that he had been robbed at gunpoint by two men, who then fled on foot. The victim explained that he and his uncle saw the two men at a gas station after the robbery. They confronted the men about the robbery, and the men denied involvement and drove off in a dark blue Pontiac. As Huber and the victim drove to the scene of the incident, the victim spotted the alleged perpetrators' Pontiac in a parking lot. Officer Huber broadcast a description of the car and its location on his police radio, and proceeded to drop the victim off at his home. Upon Huber's return, the Pontiac was gone, but another Officer saw a car matching the Pontiac's description sitting empty a few blocks away, in the parking lot of Broaster Hut Restaurant. Huber proceeded to the scene and parked in an alley to watch the Pontiac.
Huber saw a man matching the description of one of the suspects looking out of the door of the restaurant in all directions. Other police cruisers arrived and were positioned to permit the officers inside to watch the Pontiac. Eventually, the suspect emerged from the restaurant and entered the driver's side door of the Pontiac. The police crews promptly pulled up to the vehicle and blocked it in.
Huber approached the vehicle and ordered the suspect, Defendant Clancy, out of the vehicle. Clancy was placed under arrest and escorted to the back of another officer's cruiser. Huber decided to have the vehicle towed from the parking lot, and began an inventory search of the vehicle. Huber found a firearm loaded with ammunition in the glove box of the Pontiac. The gun matched the description that the victim had provided of the gun used in the robbery.
On September 21, 2000, Clancy was charged by complaint with carrying a concealed weapon. On January 30, 2001, a hearing was held on Clancy's motion to suppress the evidence recovered during the search of the Pontiac. On March 16, 2001, the trial court denied the motion to suppress. Clancy subsequently entered a plea of no contest to the charge, and was convicted and sentenced. He filed a timely notice of appeal.
Clancy presents one assignment of error.
 ASSIGNMENT OF ERROR THE TRIAL COURT ERRED BY OVERRULING MR. CLANCY'S MOTION TO SUPPRESS EVIDENCE DISCOVERED DUE TO THE ILLEGAL SEARCH OF THE CAR FROM WHICH HE WAS ARRESTED.
When considering a motion to suppress, the trial court assumes the role of the trier of fact and is, therefore, in a better position than an appellate court to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357. A reviewing court will not disturb the trial court's findings of fact where there is sufficient evidence to support them. State ex rel. GFBusiness Equip., Inc. v. Indus. Comm. (1982), 2 Ohio St.3d 86. The corollary, of course, is that an appellate court must review the record to determine if there was sufficient evidence to support the trial court's findings. This is not a factual determination, however, but a question of law under R.C. 2505.01, which provides that questions of weight and sufficiency of the evidence are questions of law. Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66. That matter requires an independent review, without deference to the trial court's conclusions. State v. Satterwhite (1997), 123 Ohio App.3d 322;State v. Medcalf (1996), 111 Ohio App.3d 142; State v. Klein (1991),73 Ohio App.3d 486.
We note from the outset the fundamental rule that the state bears the burden of establishing that a warrantless search, which is per seunreasonable, is nevertheless reasonable pursuant to one or moreexceptions to the Fourth Amendment's warrant requirement. Xenia v.Wallace (1988), 37 Ohio St.3d 216, paragraph two of the syllabus. Here, the State relied on the "inventory search" exception.
The inventory exception to the Fourth Amendment's warrant requirement permits police to conduct a warrantless search of a vehicle in order to inventory its contents after the vehicle has been lawfully impounded.State v. Mesa (1999), 87 Ohio St.3d 105, 108-109. See South Dakota v.Opperman (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000. Therationale for excluding inventory searches from the warrant requirementis that inventory searches are an administrative or caretaking function,rather than an investigative function. Opperman, supra,428 U.S. at 370, 96 S.Ct. at 3097, 49 L.Ed.2d at 1006, fn. 5.
 While the concepts of the "inventory" exception and "impoundment" areoften commingled, they constitute two distinct considerations in FourthAmendment jurisprudence. U.S. v. Duguay (C.A.7 1996), 93 F.3d 346, 352(citing Opperman, supra).
"Impoundments by the police may be in furtherance of `public safety' or`community caretaking functions,' such as removing `disabled or damagedvehicles,' and `automobiles which violate parking ordinances, and whichthereby jeopardize both the public safety and the efficient movement ofvehicular traffic.'" Id. (quoting Opperman, supra, 428 U.S. at 368-69,96 S.Ct. at 3097, 49 L.Ed.2d at 1005). If not supported by probablecause, impoundment must be consistent with the police "caretaking" role,which is completely unrelated to the investigatory function. Id.(citing Opperman, supra, 428 U.S. at 370, 96 S.Ct. at 3097,49 L.Ed.2d at 1006, fn. 5).
 The reasons that permit impoundment of a vehicle are distinct from thepermissible reasons for conducting an inventory search of an impoundedvehicle, "which are `to protect an owner's property while it is thecustody of the police, to insure against claims of lost, stolen, orvandalized property, and to guard the police from danger.'" Id.(quoting Colorado v. Bertine (1987), 479 U.S. 367, 372, 107 S.Ct. 738,741, 93 L.Ed.2d 739, 745-46). It follows that, in order for police toperform a valid inventory search of an automobile, the vehicle must firstbe lawfully impounded. Opperman, supra, 428 U.S. at 373,96 S.Ct. at 3099, 49 L.Ed.2d at 1007; State v. Cole (1994), 93 Ohio App.3d 712, 715(Cook, J.); State v. Gordon (1994), 95 Ohio App.3d 334, 338.
An impoundment is lawful if it is conducted pursuant to standardizedpolice procedures. Bertine, supra, 479 U.S. at 375-376,107 S.Ct. at 743, 93 L.Ed.2d at 748; State v. Hathman (1992), 65 Ohio St.3d 403,paragraph one of the syllabus; State v. Wilcoxson (July 25, 1997),Montgomery App. No. 15928, unreported. Standardized procedures forimpoundment are required to ensure that a subsequent inventory search isnot "a ruse for a general rummaging in order to discover incriminatingevidence." Florida v. Wells (1990), 495 U.S. 1, 4, 110 S.Ct. 1632, 1635,109 L.Ed.2d 1, 6.
 Standardized procedures might take the form of statutes or lawsauthorizing impoundment. See, e.g., R.C. 4507.38(B)(1) (authorizingimpoundment when a driver is operating a vehicle with a suspendedlicense); R.C. 4509.101(B)(1)(a) (authorizing impoundment when a personis operating a vehicle without proof of financial responsibility); R.C.4511.195 (authorizing impoundment for certain OMVI violations).Standardized procedures may also be found in police regulations ormunicipal ordinances authorizing impoundment. See, e.g., Gordon, supra.
The City of Dayton Police Department has promulgated General Order3.02-6, entitled "TOWING MOTOR VEHICLES," which was admitted in evidenceby the trial court during the suppression hearing. General Order 3.02-6begins with following "POLICY STATEMENT":
 Removing motor vehicles obstructing roadways, involved in crimes, damaged in traffic accidents, or abandoned in streets, is a police function. Impounding these vehicles using tow trucks often inconveniences the owners, and can create an unfavorable view of the Police Department. Officers are to tow vehicles only when necessary.
Section I of the General Order, "WHEN TO TOW A VEHICLE," sets forth nine situations (A through I) when it would be appropriate to tow a vehicle:
A. Driver/Owner Arrested
 When the driver or owner of a vehicle has been arrested, and any one or more of the following circumstances exist, the vehicle must be towed:
 1. The vehicle is obstructing traffic and no passenger is available to move it.
 2. The vehicle is illegally parked and no passenger is available to move it.
3. The driver or owner requests it.
4. The vehicle is needed for evidence processing.
 5. The vehicle is parked on the shoulder or median of a freeway (such as US35, I-75, R4) and no passenger is available to move it.
 6. The Ohio Bureau of Motor Vehicles or Ohio law requires it.
 7. The driver has been arrested for DUI and no passenger is available to move it.
 8. The vehicle is in a sparsely populated area and would be vulnerable to theft.
B. Vehicle Containing Evidence:
 Suspect vehicle used in criminal offense or Hit and Run suspect vehicle parked on a City street or from private property or city street when involved in serious injury accident.
 C. Unattended vehicle illegally parked in a tow-away zone, parked more than three hours on a freeway berm; parked in violation and on the tow-in sheet or cited vehicles which remain in violation more then two hours.
 D. Vehicle towed from accident scene at owner's request or when owner is incapable of making decision, or to remove the vehicle from obstructing traffic.
 E. Vehicle parked on a City street with no license plates or with plates expired more than seven days, but no abandoned vehicles, as described in Section VII, Towing Abandoned Vehicles.
 F. Recovered GTA and owner cannot be contacted, or respond within 30 minutes, or car is needed for evidence.
 G. Vehicle is parked at the scene of a fire or other emergency, impeding safety forces, or may become damaged.
 H. Vehicle is impounded by direction of the County Coroner's Investigator when the owner is deceased.
 I. Vehicle is abandoned as defined in RCGO Section 76.01 (Section VII).
Officer Huber testified that a records check revealed that the Pontiac was titled in the name of Regina Chapman. (T. 30). The record does not reflect that the Pontiac was reported stolen or that police contacted Ms. Chapman to determine whether it had been stolen, or whether she was available to retrieve her vehicle. As its driver, Clancy had standing to challenge the search of the vehicle that police performed. State v.Carter (1994), 69 Ohio St.3d 57; State v. Hamilton (1997),122 Ohio App.3d 259.
Officer Huber testified that it was his department's procedure to "inventory the whole vehicle prior to towing" when the sole occupant of the vehicle is arrested and he is not the registered owner of the vehicle. (T.14). Huber further stated that towing the vehicle was a matter committed to the officer's discretion. (T.20, 22). However, Huber acknowledged that the vehicle was parked legally in the restaurant parking lot (T.20), and that the car was not used in the commission of the alleged robbery (T.24). Huber testified that his authority to tow the vehicle derived exclusively from the arrest of the driver. (T.24).
"Nothing in Opperman . . . prohibits the exercise of police discretionso long as that discretion is exercised according to standard criteriaand on the basis of something other than suspicion of evidence ofcriminal activity." Bertine, supra, 479 U.S. at 375, 107 S.Ct. at 743,92 L.Ed.2d at 748. Officer Huber's testimony regarding the departmenttowing procedures does not mesh with the department procedures admittedduring the suppression hearing, shown above. Section I(A) plainly statesas a dual requirement that a vehicle may be towed when driver or owner isarrested and one or more of the listed circumstances exist. The Statefailed to prove that any of the circumstances listed in section I(A)applied on these facts to permit it to be towed. Therefore, theimpoundment of the vehicle was illegal, and the resulting searchtainted, to the extent that its reasonableness was justified by theinventory search exception to the Fourth Amendment's warrantrequirement.
 However, the State's failure to prove that the inventory exception tothe warrant requirement applies does not terminate our analysis. InState v. Murrell (2002), 94 Ohio St.3d 489, the Supreme Court recentlyadopted the bright-line test regarding automobile searches following alawful arrest from New York v. Belton (1981), 453 U.S. 454,101 S.Ct. 2860, 69 L.Ed.2d 768. The Court held in Murrell that "when a policeofficer has made a custodial arrest of the occupant of an automobile, theofficer may, as a contemporaneous incident of that arrest, search thepassenger compartment of that automobile." Murrell, supra, at syllabus.
In Murrell, the court overruled its prior holding in State v. Brown(1992), 63 Ohio St.3d 349. The Brown Court distinguished Belton on thebasis that, in Belton, the police officer had probable cause to searchthe vehicle after the arrest, while in Brown, the police officer didnot. Id. at 351-52. Brown stated further that "[i]f Belton does standfor the proposition that a police officer may conduct a detailed searchof an automobile solely because he has arrested one of its occupants, onany charge, we decline to adopt its rule." Id. at 352.
However, upon re-examination of this issue in Murrell, the Court foundthat "although the Brown opinion attempted to distinguish that case fromBelton based on the differing facts of the two cases, the attempt wasunfounded." Murrell, supra, at *5.
 While it appears clear that there was probable cause for the search in Belton, while there was not in Brown (the point upon which the opinion in Brown relied to distinguish the two, id. at 351-352, 588 N.E.2d at 115), the United States Supreme Court in Belton deliberately chose not to analyze the situation before it under the automobile exception to the warrant requirement, which is based on probable cause. 453 U.S. at 462-463, 101 S.Ct. at 2865, 69 L.Ed.2d at 776, fn. 6 ("Because of this disposition of the case, there is no need here to consider whether the search and seizure were permissible under the so-called `automobile exception.'"). Instead, the Belton court purposely determined to craft a bright-line rule of sufficient scope to encompass the facts of Brown, as well as those of the case sub judice.
Id.
The facts of Murrell are similar to the case at bar. There, thedefendant was stopped for speeding, and upon a subsequent check on thedefendant's license, the police officer found that there was anoutstanding warrant for the defendant's arrest for failure to pay childsupport. The officer arrested the defendant, handcuffed him, and placedhim in the back of the cruiser. The officer then proceeded to search thedefendant's vehicle, wherein he found a small cloth bag on thefloorboards that contained crack cocaine and powdered cocaine. Theofficer also arrested the defendant for drug possession. The SupremeCourt determined, following Belton, that the post-arrest search of thepassenger compartment of the vehicle was permissible.
Here, Clancy was arrested and placed in a cruiser before the search ofthe car began. It is immaterial whether Officer Huber searched thevehicle pursuant to the inventory exception or any other exception to thewarrant requirement. Because Officer Huber had made a lawful custodialarrest of Clancy, Huber was permitted, as incident to that arrest, toperform a search of the passenger compartment of the vehicle. Murrell,supra, at syllabus. Therefore, we find that Officer Huber's search of thevehicle did not violate the Fourth Amendment, albeit for differentreasons than stated by the trial court. Accordingly, the trial court didnot err when it overruled Clancy's motion to suppress.
The assignment of error is overruled.
 Conclusion Having overruled the assignment of error presented, the judgment oftrial court will be affirmed.
BROGAN, J., and YOUNG, J., concur.