The STATE of Ohio, Appellant,

v.

HAMILTON, Appellee.

[Cite as *State v. Hamilton* (1997), 122 Ohio App.3d 259.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16124.

Decided Aug. 1, 1997.

*Mathias H. Heck, Jr.*, Montgomery County Prosecuting Attorney, and *Steven J. Ring*, Assistant Prosecuting Attorney, for appellant.

*Lynn Koeller*, Montgomery County Public Defender, and Suzanne M. *Lough Wynn*, Assistant Public Defender, for appellee.

BROGAN, Judge.

The state of Ohio appeals from an order of the trial court suppressing evidence seized by police officers and statements obtained from the appellee, Rodney Hamilton. The appeal is taken pursuant to Crim.R. 12(J).

On November 30, 1995 at approximately 10:00 p.m., Dayton Police Officer Joe Pence, Jr. was patrolling the area of S. Broadway Street in Dayton, Ohio. As a member of the Neighborhood Strike Force, Pence was working undercover in plain clothes and in an unmarked car. Pence observed a black Chevy Impala stopped in front of the red light at the intersection of S. Broadway and Germantown Streets. Pence immediately recognized the car as having been involved in a drug deal on November 17, 1995. Pence recognized the car generally and he specifically remembered the license plate number. In that earlier situation, Pence had accompanied an informant to the area of 124 S. Williams Street to buy heroin. His informant was directed from inside that house to the black Impala where a man described as being six feet tall and weighing two hundred pounds retrieved heroin from it.

Pence and a fellow officer followed the car as it traveled from S. Williams to Broadway to northbound I-75. When the Impala got off the interstate at Main Street, it failed to stop for the red light at the exit and continued north on Main. Pence radioed for uniform crews to stop the Impala for the traffic violation, and, as a result, Officers Aurrichio and Wiesman stopped the car in front of 1900 Riverside Drive.

Driving the car was appellee, Rodney Hamilton, and his passenger was his girlfriend Loretta Taylor, who was the owner of the vehicle. Registration data showed that she lived at 1929 Riverside Drive.

Pence wanted to ask Taylor if she knew that her car had been used in a drug sale. Pence testified that he approached her in the cruiser where one of the uniformed officers had placed her, and there Taylor told Pence that she was unaware of the drug deal of November 17, 1995. She consented, in writing, to a search of her car.

In that search, Officer Aurrichio found a plastic Baggie containing twenty-two empty pharmaceutical gelcaps. From his experience in the drug unit, Pence's suspicions were aroused by the gelcaps, and he asked Taylor what she knew about them. She denied any knowledge of them. She did, however, consent, in writing, to the search of her nearby apartment.

Pursuant to Taylor's consent, Pence and other Dayton officers accompanied her to 1929 Riverside Drive, where she let them in and sat in the living room while they searched the apartment. Taylor had told Pence that she was the only

tenant on the lease of the one-bedroom apartment. However, appellee appeared at the apartment after the search had begun and told officers that he also lived there. Making no comment on the search in progress and voicing no objection to it, appellee took a seat next to Taylor and waited. In the apartment, Detective Louderback found a velour Crown Royal bottle bag in the pocket of a man's white suit coat which hung in a closet. In the cloth bag was a plastic Baggie. In the Baggie were fourteen individual packets of suspected cocaine. There were also three foil bindles of suspected heroin. Sergeant Willis of the DPD, who was supervising the search, was advised of the find, and he temporarily stopped the search. He had decided to obtain a search warrant.

Both appellee and Taylor were informed of the find, and Officer Kraft read them their rights from a card. During the reading of the rights, appellee volunteered that the drugs were his alone and that Taylor was ignorant of them. Thereafter, appellee was arrested for aggravated trafficking in cocaine. On his way out of the apartment, appellee told Det. Del Rio that the white suit jacket was his. A search warrant was obtained for the premises, and the search continued but no additional contraband was found.

In the state's first assignment, it contends that the trial court erred to its prejudice by failing to find that the appellee had no standing to challenge the search of Loretta Taylor's car and apartment, by failing to apply the principle of shared authority to consent to the search.

The appellee does not dispute that he was driving Loretta Taylor's car at the time he was stopped.

In granting the appellee's suppression motion, the trial court found that Taylor's consent to search her car and apartment was invalid because it was the product of an unlawful detention. Further, the court found that the state had not established that her waiver was voluntary and knowledgeable. The court found that Taylor was merely submitting to the apparent authority of the numerous police officers in the immediate area of the cruiser in which she was seated.

■ Suppression of the fruit of a Fourth Amendment violation can be urged only by those whose rights were violated by the search itself. Standing is not achieved solely by a person's status as a defendant or by introduction of damaging evidence. *Alderman v. United States* (1969), 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176.

Consequently, before a court may review the reasonableness of police behavior, the defendant must be able to demonstrate that his Fourth Amendment right to privacy was violated. In *Rakas v. Illinois* (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387, defendants were passengers in an automobile that had been lawfully stopped on reasonable suspicion but unlawfully searched. The search uncovered

a sawed-off rifle under the passenger seat and a box of rifle shells in a locked glove compartment, which helped to link the defendants to a robbery. The defendants claimed standing because of their lawful presence as passengers.

The *Rakas* court held that because the defendants were legitimately present in the vehicle did not give them a legitimate expectation of privacy in the searched vehicle. The court held that they had neither a property nor a possessory interest in the automobile, nor did they have a legitimate expectation of privacy in the glove compartment or the area under the seat of the car in which they were merely passengers. Similarly, the Ohio Supreme Court has held that one who is in lawful possession of a vehicle, though not the title owner, has a legitimate expectation of privacy in the vehicle and standing to assert a Fourth Amendment claim arising out of the unlawful search of the vehicle. *State v. Carter* (1994), 69 Ohio St.3d 57, 630 N.E.2d 355; see, also *State v. Hines* (1993), 92 Ohio App.3d 163, 634 N.E.2d 654.

Loretta Taylor testified that she lived with the appellee and she permits him to use her car all the time. There was no evidence presented to refute her testimony on this matter. We must therefore conclude that the appellee had standing to object to the search of the vehicle he was driving at the time he was stopped by the police. The first assignment of error is overruled.

In the state's second assignment, the state argues:

"The trial court erred to the prejudice of the state by ruling that the 'continued detention' of Loretta Taylor was illegal and invalidated the recovery of the evidence and the statement obtained by police against appellee."

The trial court held that from the moment Taylor was removed from her car and placed in the cruiser her detention was unlawful and any consent she gave was clearly invalid.

Recently, the United States Supreme Court held that a police officer may, as a matter of course, order passengers of a lawfully stopped automobile to exit the vehicle. Officer making the traffic stop may order passengers to get out of the car pending completion of stop. *Maryland v. Wilson* (1997), 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41.

It is firmly established that the detention of an individual by a law enforcement officer must be justified by specific and articulable facts indicating that the detention was reasonable. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Once the reason for the detention ends, the citizen detained must be allowed to continue on his way. *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237. An officer may not, without additional cause, detain a person stopped for a traffic offense or equipment violation longer than

necessary to issue a citation. *State v. Foster* (1993), 87 Ohio App.3d 32, 621 N.E.2d 843.

Since Officer Pence stated that he had observed an individual sell heroin from the stopped vehicle two weeks earlier, it was reasonable for him to obtain the identity of the occupants of the vehicle and to do a protective search for weapons under the front seats of the vehicle.

The trial court specifically noted that it found Taylor's testimony compelling on the issues of detention and consent. She testified that the police searched the trunk of her car and recovered the glassine capsules before they asked her to sign a consent to search the vehicle. She testified that one of the officers who requested she sign the consent form stated, "You know we can seize your car and make you move." She said that the officer said that because he found the clear capsules in the trunk of the car. She testified that there were four police officers present at the scene.

On cross-examination she testified that she gave her consents to the searches freely and voluntarily because she had nothing to hide in the car or in her apartment.

The burden rests upon the prosecution to establish that the consent was voluntarily given, a burden which is not satisfied by showing a mere submission to a claim of lawful authority. The question of whether a consent to a search is in fact voluntary is a question of fact to be determined from the totality of all the circumstances. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854.

We cannot say that the record does not support the trial court's conclusion that the state of Ohio had not met its burden of proving that Taylor's consents to search her car and apartment were voluntary.

The trial court specifically found Taylor's testimony "compelling." She said that the search of her car took place *before* she gave consent. She said that she consented to the search of her apartment *after* the officer told her she could possibly lose her car and be forced to move.

The trial court also found that statements given by the appellee should be suppressed as the product of the illegal search. Evidence may be excluded if it is derived from police illegality that amounts to a constitutional violation. The appellee's statement was given immediately after the police searched appellee's clothing in the closet he shared with Taylor. The statement was obtained as a direct consequence of the illegal search. *New York v. Harris* (1990), 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13.

The appellant's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

WOLFF, J., concurs.

RICHARD K. WILSON, J., dissents.

RICHARD K. WILSON, J., retired, of the Second Appellate District, sitting by assignment.

WILSON, Judge, dissenting.

In a "decision and order" filed July 9, 1996, the trial court found that the traffic stop of the Impala driven by the defendant was a pretext for searching for drugs. The court then quoted paragraph one of the syllabus in *State v. Robinette* (1995), 73 Ohio St.3d 650, 653 N.E.2d 695:

"When the motivation behind a police officer's continued detention of a person stopped for a traffic violation is not related to the purpose of the original, constitutional stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some separate illegal activity justifying an extension of the detention, the continued detention constitutes an illegal seizure."

The court suppressed from the evidence the cocaine and heroin found during the search of the defendant's apartment and the defendant's statements made immediately after the seizure of the drugs because they "are all fruits of that stop."

The state appealed from the order and also moved the trial court to reconsider its "decision and order."

In a "decision and entry" filed September 5, 1996 the trial court modified its prior order. The court in effect held that the traffic stop was reasonable by Fourth Amendment standards, but that "the continued detention constitutes an illegal seizure."

The court then made the following statements:

"This Court finds that the continuing detention was unlawful and, therefore, any ensuing consent to search was invalid. From the moment Ms. Taylor was removed from the black Impala and placed in the cruiser, her detention was unlawful, and any consent she may have given is not clearly valid. In addition, the Court finds that Ms. Taylor was merely submitting to the apparent authority of the numerous police officers in the immediate area while she was being

detained in the cruiser. Further, the Court finds that the State has not established that Ms. Taylor's waiver was voluntary and knowledgeable. The police also failed the 'bright line' test as enunciated in *Robinette.*"

On the last page of the "decision and entry" the trial court made six specific findings. The fourth and most significant finding provides:

"Any statements made by the defendant and the subsequent search of the residence are all fruits of that illegal, continued detention."

There was no specific finding made on the issue of whether Taylor's consent to search the apartment was voluntary.

There was also no specific finding that Taylor was merely submitting to the apparent authority of the numerous police officers while she was being detained in the cruiser or at any other time.

The state appealed from the "decision and entry." The two appeals were thereafter consolidated into the appeal presently before us.

The "bright line" test enunciated in *Robinette* is set forth in paragraph two of the syllabus:

"The right, guaranteed by the federal and Ohio Constitutions, to be secure in one's person and property requires that citizens stopped for traffic offenses be clearly informed by the detaining officer when they are free to go after a valid detention, before an officer attempts to engage in a consensual interrogation. Any attempt at consensual interrogation must be preceded by the phrase 'At this time you legally are free to go' or by words of similar import." *Robinette*, 73 Ohio St.3d 650, 653 N.E.2d 695.

A four-to-three majority in *Robinette* in effect adopted a rule that a valid consent to search and waiver of Fourth Amendment rights cannot be voluntary under *Robinette* facts absent the consenter's knowledge that he has the right to refuse consent.

In *Ohio v. Robinette* (1996), 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347, the U.S. Supreme Court reviewed the Ohio Supreme Court case. Six justices concurred in the opinion written by Chief Justice Rehnquist. There was also a concurring opinion and a dissenting opinion.

The court rejected the "bright line" test and held that knowledge of the right to refuse consent to search is not a prerequisite to a finding that a consent was voluntary. The question of whether a consent to search was voluntary or was the product of duress or coercion is a question of fact to be determined from the totality of the circumstances. Knowledge of the right to refuse consent is one of the circumstances to be considered. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854.

Both *Robinette* and *Schneckloth* are first-party-consent cases involving consenters who were defendants.

In the case before us the defendant and his girlfriend, Loretta Taylor, reside together in the three-room one-bedroom apartment that was searched after Taylor consented to the search.

It is established law that a third party who possesses common authority over premises may voluntarily consent to a search of those premises and that such a search is reasonable. *United States v. Matlock* (1974), 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242; *State v. Greer* (1988), 39 Ohio St.3d 236, 530 N.E.2d 382.

It is also established law that Fourth Amendment rights are personal rights that cannot be vicariously asserted. *Rakas v. Illinois* (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387.

In view of the applicable law, it appears to me that the outcome of the motion to suppress hinges on the factual issue of whether Taylor's consent to search her apartment was voluntary. The state has the burden to show that the warrantless search of the apartment was reasonable, *i.e.*, that the state had the voluntary consent of Taylor. Like other factual issues in dispute, the defendant has the due process right to present evidence that Taylor's consent was involuntary.

Dayton police officers Pence and Del Rio testified at the hearing on the motion to suppress evidence. The defendant's only witness was Loretta Taylor.

The state's witnesses testified as to the facts and actions which took place surrounding the seizure of the drugs as set forth in the majority opinion. There was also testimony that Taylor's consents to search her car and apartment were voluntary and were given with the knowledge that she had the right not to consent.

Taylor's testimony confirmed much of the state's evidence. Some of her testimony was circumstantial evidence relevant to showing that her consents to search were not voluntary; however, this testimony was of little probative value when compared to her direct testimony:

"Q. When you gave written permission to search your vehicle, did you feel that you were doing that freely and voluntarily?

"A. Yes.

"Q. And the police didn't threaten you or coerce you to get you to let them search that vehicle?

"A. No.

"Q. And the reason you let them search the vehicle?

"A. There was nothing in the car.

"Q. Okay. To your knowledge, there was no reason not to let them search the vehicle.

"A. Right.

"MR. FALLANG: I have no further questions, your Honor.

"THE COURT: Cross-examination.

"Cross–Examination.

"BY MR. POHLMAN:

" Q. Ma'am, with respect to the house consent form, you did that freely and voluntarily, too, didn't you, Ms. Taylor? Right?

"A. Right.

"Q. You didn't have any concern there would be anything found there either, did you?

"A. Right.

"Q. You didn't believe there was any drugs there, did you?

"A. Right.

"Q. Okay. In fact, you would describe your actions with the police as you wanted to cooperate with them, didn't you?

"A. That's true.

"Q. And they asked you for there consents for the car and house, and you willingly went along and granted the consents; is that correct?

"A. Yes."

In my view the evidence would not support a finding that Taylor's consent to search her apartment was involuntary.

I would reverse the order of the trial court sustaining the defendant's motion to suppress evidence and remand for further proceedings.