OPINION
Gina Bell, defendant-appellant, appeals her convictions and sentences for possession of heroin, a violation of R.C. 2925.11; preparation of heroin for sale, a violation of R.C. 2925.07; and trafficking in heroin, a violation of R.C. 2925.03. The Franklin County Court of Common Pleas found appellant guilty of the above offenses after appellant entered a guilty plea for the preparation of heroin for sale and trafficking in heroin charges, and entered a no contest plea for the possession of heroin charge.
On November 17, 1999, appellant was stopped by Officer Troy Palmer, an officer with the Columbus Police Department. Palmer testified in a suppression hearing that he stopped appellant's automobile after Officer Lawrence Gauthney, also with the Columbus Police Department, "advised that he observed a narcotics transaction, a hand to hand, and gave me a vehicle description and the direction of travel." Gauthney also told Palmer he had observed a minor traffic violation as appellant left the location of the narcotics transaction. Palmer stated he told appellant "the reason for the stop * * * was twofold. For one, it was the traffic violation and [two] the suspected narcotics involvement or activity at 20th and Broad." Palmer testified that due to the traffic merging onto Interstate 71, he asked appellant to exit her vehicle and accompany him to his cruiser "where I could explain what exactly was relayed to me by the plain clothes officers." Another officer arrived at the scene to assist Palmer. Appellant was placed in the police cruiser and Palmer testified appellant then gave him consent to search the vehicle.
Inside the trunk of the vehicle, Palmer found two "false cans" and explained:
 I believe one was a shaving cream can, and the other was, I think, a can of fix a flat, but they were both false cans. They had threaded bottoms, and the bottoms were already removed and laying on the floorboard of the trunk.
* * *
 False canisters are used for hiding valuables or just to disguise the contents of the can, but inside one of the cans were also several grains of white rice.
Palmer stated the reason the false cans were suspicious was because false cans can be used to transport drugs. He also stated that drug transporters will sometimes place rice inside false cans to absorb moisture because if the transported drug is "a powder and it gets wet or has moisture, it clumps and hardens."
Unable to find any drugs inside appellant's car, Palmer stated as he started to let appellant out of the cruiser "I told her the only thing that I had not checked was her purse. * * * At that time I asked her if I could have her consent to look in her purse for narcotics * * * at which time she said, `yeah, you can look in my purse.'" According to Palmer, he asked appellant to leave her purse on the trunk of her car before being placed in the police cruiser. Appellant claimed the officers placed her purse on the trunk while they searched her vehicle. Palmer found one hundred and fifty-eight envelopes containing heroin inside appellant's purse. When asked about the heroin, appellant told Palmer it was medicine she was taking to her father who was in the hospital with cancer. Palmer testified that when he told appellant it looked like heroin, she admitted it was heroin.
On February 10, 2000, appellant was indicted for possession of heroin, preparation of heroin for sale, and trafficking in heroin. On June 13, 2000, appellant filed a motion to suppress "any and all evidence, physical or verbal, obtained during the illegal detention, interrogation and search." A suppression hearing was held on November 14, 2000 by the trial court. Three witnesses testified at the hearing: Gauthney, Palmer, and appellant. Gauthney testified concerning an alleged drug transaction he saw appellant participate in and the information he related to Palmer. Palmer testified concerning appellant's detention and arrest and the contents found in her purse. Appellant testified that she felt threatened and, therefore, did not truly give Palmer consent to search her purse.
The trial court overruled appellant's motion to suppress. Appellant thereafter entered a guilty plea to the preparation of heroin for sale and trafficking in heroin charges and entered a no contest plea for the possession of heroin charge. The court found appellant guilty of all counts and sentenced appellant to serve four years in prison for her preparation of heroin conviction and twelve months for each of the remaining charges. The court also found the trafficking in heroin and possession of heroin convictions should be served concurrent with each other and run consecutive to the preparation of heroin conviction. Appellant appeals the convictions and sentences imposed upon her by the trial court, and presents the following four assignments of error:
 I. The trial court erred when it denied Bell's motion to suppress because the search of Bell's purse lacked a warrant and did not fall under any exception to the warrant requirement.
 II. The trial court failed to satisfy the statutory requirements for imposing consecutive sentences.
 III. The trial court was required to sentence Ms. Bell to the shortest possible prison terms because she had never served prison time.
 IV. Trial counsel was ineffective for failing to object to Ms. Bell's sentence because the trial court failed to comply with the statutory provisions governing consecutive sentences and the imposition of a greater-than-minimum term.
Appellant argues in her first assignment of error that evidence found by the officers after their warrantless search of her purse should have been suppressed. Appellant claims the officers' actions did not fall within any of the exceptions to the Fourth Amendment of the United States Constitution concerning warrantless searches.
When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses. State v. Mackey (2001), 141 Ohio App.3d 604, 609. "An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by competent, credible evidence." State v. Philpot (Aug. 13, 2001), Butler App. No. CA99-12-215, unreported, following State v. Retherford (1994), 93 Ohio App.3d 586, 592. The appellate court must determine de novo whether the trial court's conclusions of law, based on those findings of fact, were correct. Mackey, at 609.
According to the Fourth Amendment: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This provision of theFourth Amendment has been applied to actions by the states through theFourteenth Amendment. State v. Orr (2001), 91 Ohio St.3d 389, 391.
Under the Fourth Amendment, a search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals (1992), 63 Ohio St.3d 354, 364, following United States v. Jacobsen (1984), 466 U.S. 109, 113. "A woman's expectation of privacy with respect to her purse is as great, if not greater, than the expectation of privacy connected with a closed container in the glove compartment of an automobile." State v. Tyler (Nov. 29, 1994), Franklin App. No. 94APA04-492, unreported, discretionary appeal not allowed (1995),72 Ohio St.3d 1412. Two legal theories that would support Palmer's search of appellant's purse include: (1) consent to search the purse was properly given by appellant; and (2) Palmer had probable cause to believe appellant's purse was being used to transport contraband.
The touchstone of an analysis under the Fourth Amendment is always the reasonableness in all the circumstances of a particular governmental invasion of a citizen's personal security. State v. Lozada (2001),92 Ohio St.3d 74, 78. The Fourth Amendment test for a valid consent to search is that consent be voluntary, and voluntariness is a question of fact to be determined from all the circumstances. Ohio v. Robinette (1996), 519 U.S. 33, 40, 117 S.Ct. 417, 421. Among the circumstances to be considered are the length of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment. State v. Dettling (1998), 130 Ohio App.3d 812, 814, following Schneckloth v. Bustamonte (1973), 412 U.S. 218, 226. When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when the continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure. State v. Robinette (1997), 80 Ohio St.3d 234, paragraph one of the syllabus.
In the present case, two different versions were given concerning the events surrounding the search of appellant's purse. According to appellant, Palmer did not tell her why she had been stopped. Appellant claims she left her purse on the passenger seat of her car and the officers removed it from the car and placed it on the trunk of her car. Appellant testified the officers asked for her consent to search her vehicle after telling her she was going to be cited for failing to use her turn signal. Appellant then testified that after the officers searched her vehicle for fifteen to twenty minutes, they told her:
 * * * they didn't find anything in my car. He had brought my purse back to the back seat of the car and asked me could he search my purse.
* * *
I gave him consent to search the purse.
* * *
 Because they told me if I didn't allow them to search my purse that they would call the canine units and that if they found anything they would take me to jail. They would take my kids. Children Services would get my kids.
Appellant claims she did not think she had the right to tell the officers that they could not look in her purse.
Palmer testified that he informed appellant the reason for the stop was because of a "traffic violation and the suspected narcotics involvement or activity at 20th and Broad." Palmer stated that they had "aired for a canine officer to respond with his dog," but the canine unit was unavailable at the time. He also stated that he did not tell appellant they were going to call for a canine unit. He further stated when he asked her about the false cans, she stated the cans were not hers, that they belonged to her boyfriend, and she did not know why they were in her car. Palmer stated:
 I had issued her the traffic citation for the misdemeanor infraction. And as I started to let her out of the vehicle, I told her the only thing that I had not checked was her purse, and for the fact that I had told the officers that there were no suspected narcotics found in the vehicle, I could tell them that I even checked her purse. At that time I asked her if I could have her consent to look in her purse for narcotics, and then I was in the process of letting her out of the rear seat of the cruiser, and she said, "There's no narcotics in the car?" I said, "No, but the only thing I have not checked was your purse." And I asked her for her consent to look in the purse for narcotics at which time she said, "Yeah, you can look in my purse."
A complete review of Palmer's testimony gives no indication that he threatened appellant in a manner that would nullify her consent to search her purse. Only by believing appellant's testimony concerning what occurred during the traffic stop can one reach the conclusion that her consent was not voluntary. Even though appellant claimed she did not think she had the right to tell the officers they could not search her purse, "[k]nowledge of the right to refuse consent is not a prerequisite to finding a voluntary consent." State v. Trumbull (Sept. 17, 1998), Franklin App. No. 97APA12-1661, unreported.
Additionally, in a hearing on a motion to suppress evidence, the trial court assumes the role of the trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Hopfer (1996), 112 Ohio App.3d 521, 548. The trial court stated that its decision was "[b]ased on all of the facts and circumstances, including the credibility of the witnesses who have testified surrounding the stop and the search attendant to the arrest of the defendant for a narcotics offense * * *." Therefore, it is reasonable to conclude the trial court did not believe appellant's account of the traffic stop. Accordingly, based upon a review of the record, we find that competent, credible evidence supports a finding that appellant voluntarily gave her consent to the officers to search her purse.
Appellant also argues her alleged consent to allow the officers to search her purse occurred after Palmer told her she was free to leave. Appellant claims Palmer had no intention of allowing her to leave before a search of her purse had been conducted. Appellant is probably correct.
"An officer may not, without additional cause, detain a person stopped for a traffic offense or equipment violation longer than necessary to issue a citation." State v. Hamilton (1997), 122 Ohio App.3d 259, 263. According to Palmer, during a normal traffic violation stop, a ticket would be issued and then the detained person would be allowed to leave. However, in the present case, there was "something else going on. She is a suspect in a narcotics transaction." Palmer had a reasonable suspicion of criminal activity to justify further detention of appellant until her purse was searched based upon the alleged criminal activity Gauthney witnessed that appellant was involved in. It is also apparent that this was not a simple traffic stop based upon Palmer's testimony that he told appellant from the onset that she was being stopped for a traffic violation and because of her "suspected narcotics involvement or activity at 20th and Broad." It is further apparent that Palmer believed the purse contained narcotics because he "asked her if I could have her consent to look in her purse for narcotics." Therefore, we find that competent, credible evidence supports the finding that appellant was not detained longer than necessary for a traffic citation because Palmer had "additional cause" to believe appellant was transporting narcotics.
A warrantless search of a purse inside a vehicle may also be proper if the evidence supports a finding that the officers had probable cause to believe the vehicle was being used to transport contraband. The United States Supreme Court has recently stated that "`contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant' where probable cause exists." Wyoming v. Houghton (1999), 526 U.S. 295, 300, 119 S.Ct. 1297, 1300, quoting Carroll v. United States (1925), 267 U.S. 132, 153, 45 S.Ct. 280, 285. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. State v. Kilgore (June 28, 1999), Butler App. No. CA98-09-201, unreported, following United States v. Ross (1982), 456 U.S. 798, 825, 102 S.Ct. 2157, 2173. "Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement." State v. Moore (2000), 90 Ohio St.3d 47, 51, certiorari denied (2001), ___ U.S. ___, 121 S.Ct. 1234. The reason for the automobile exception to the warrant requirement is "[t]he inherent mobility of the automobile created a danger that the contraband would be removed before a warrant could be issued." Moore, at 52.
In the present case, appellant does not claim she was unlawfully stopped by Palmer. However, appellant argues in her appellate brief that "Officer Palmer never acted as though he had probable cause to arrest [me] or to search [my] purse." Probable cause has been defined as a reasonable ground for belief of guilt and must be based upon objective facts that would justify the issuance of a warrant by a magistrate. Id. at 49, following Carroll, at 161, 288 and State v. Welch (1985),18 Ohio St.3d 88, 92.
A review of the testimony of Gauthney and Palmer support a finding that Palmer had probable cause to believe appellant's vehicle contained contraband. Gauthney testified that he observed a female standing by a pay phone at a gas station looking around and acting very nervous. Gauthney explained he and another officer were working undercover watching the pay phone because it was used a lot for setting up drug deals. He even testified that just fifteen minutes prior to observing this female, he made a drug arrest.
Gauthney testified that the female was "on the phone for about one to two minutes, and then when she got off the phone, she started looking around, up and down" the street. She was observed getting into a red vehicle as a passenger. Gauthney stated:
 [T]he red vehicle went northbound on 20th * * * and then did a u-turn to come back southbound, and it parked on the west side of the street. At this time this individual, the passenger * * * got out the red vehicle and started waiving down a black-colored car.
* * *
 The black-colored car pulled over to the curb. * * * As the individual got into the car, I started to walk across the street, acting like I was just a regular old Joe Civilian, and I'm watching as a transaction was being made.
He testified that he observed the female engage in a short conversation with the driver of the black vehicle. He further testified that he saw the driver hand the female a "white paper something" from her purse. He also stated the female gave the driver "paper money, which I could see, and then she immediately got out the vehicle and ran back to the red car that was parked a little north of where the rear of the black car was." Gauthney testified that he radioed for a police cruiser to stop the vehicle that had just made a drug transaction. He testified: "I radioed to the officer what I saw, and I gave him traffic violations as well." He further stated that because he and his partner were in plain clothes, they did not arrest the two individuals themselves. During cross-examination, Gauthney answered the following questions:
 Q. * * * Did you request that any uniforms or marked officers or patrol cars stop the vehicle?
A. To stop the vehicle.
 Q. And what did you ask that they do with the vehicle once they stopped it?
 A. We explained to them over the air what was going on, and they pretty much treated it as such, as a narcotics —
 Q. So you felt that you had probable cause at that point.
A. Yes, I did.
Palmer testified that Gauthney radioed him that he had "just witnessed a hand-to-hand [narcotics] transaction" and he "gave me a vehicle description and the direction of travel." Palmer also stated that "Officer Gauthney advised that he had witnessed not only the narcotics activity but, in addition to that * * * a minor misdemeanor traffic offense that had been committed when the vehicle had left 20th and Broad." Even though no drugs were found in appellant's vehicle, Palmer testified that he was "curious" about the false cans filled with rice found in appellant's trunk, which are sometimes used to transport drugs. He further testified that he did not simply write a traffic violation ticket and let appellant go because he believed appellant was a suspect in a narcotics transaction.
A review of the record shows that competent, credible evidence supports the conclusion that Palmer had probable cause to believe appellant's vehicle contained contraband sufficient to allow him to search appellant's purse even without her consent. Palmer's belief was based upon Gauthney observing appellant exchange money for a "white paper something" with another woman under circumstances that would lead a reasonable person to believe a drug transaction had taken place. Gauthney testified that he told Palmer what he saw and that he thought probable cause existed to stop appellant. Palmer testified concerning what Gauthney told him. He also testified about the false cans filled with rice found in appellant's trunk, which are sometimes used to transport drugs.
Accordingly, we find the trial court did not err when it denied appellant's motion to suppress because competent, credible evidence supports the following conclusions: (1) appellant voluntarily consented to Palmer's search of her purse; and (2) Palmer had probable cause to search her purse. Appellant's first assignment of error is overruled.
Appellant argues in her second assignment of error that the trial court failed to satisfy the statutory requirements for imposing consecutive sentences. Appellant argues in her third assignment of error that the trial court failed to satisfy the statutory requirements for imposing a sentence greater than the minimum sentence. The state concurs with both of appellant's arguments in its appellate brief.
R.C. 2929.14(E)(4) states:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
In addition to the required findings of R.C. 2929.14(E)(4), when imposing consecutive sentences, the trial court must also give its reasons for selecting consecutive sentences pursuant to R.C. 2929.19(B)(2)(c). State v. Toops (Aug. 16, 2001), Franklin App. No. 00AP-1451. "R.C. 2929.19(B)(2) and its subsections require a trial court to provide an explanation to support its findings." State v. Johnson (Sept. 29, 2000), Franklin App. No. 99AP-1463, unreported, following State v. Edmonson (1999),86 Ohio St.3d 324, 326.
A review of the record shows the trial court did not make the required findings pursuant to R.C. 2929.14(E)(4) or state the reasons for those findings pursuant to R.C. 2929.19(B)(2)(c). For this reason, we find the trial court erred. Appellant's second assignment of error is sustained.
R.C. 2929.14(B) states in part:
 [I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
The Ohio Supreme Court has interpreted R.C. 2929.14(B) to mean "that unless a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence." Edmonson, at 326. The trial court is not required to give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence. Id.
A review of the record shows appellant has never served a prison term. Therefore, in order to impose a sentence longer than the minimum prison term, the court was required to make one of the two findings specified in R.C. 2929.14(B). A review of the record shows the trial court did not make one of the two findings specified in R.C. 2929.14(B). For this reason, we find the trial court erred. Appellant's third assignment of error is also sustained.
Appellant argues in her fourth assignment of error that she received ineffective assistance of counsel because the trial court's sentencing errors should have been raised at the sentencing hearing so appellant could have been properly sentenced. However, because of our disposition of appellant's second and third assignments of error, this issue is moot. Therefore, we do not need to address appellant's fourth assignment of error. See App.R. 12(A)(1)(c).
Accordingly, appellant's first assignment of error is overruled, her second and third assignments of error are sustained, and her fourth assignment of error is rendered moot. The judgment of the Franklin County Court of Common Pleas finding appellant guilty of possession of heroin, preparation of heroin for sale, and trafficking in heroin is affirmed; however, we reverse the trial court's decision to impose consecutive sentences and a sentence longer than the minimum prison term, and remand this case to that court for further proceedings consistent with this decision.
KENNEDY and DESHLER, JJ., concur.